BOWMAN *v.* STRUBLE.

1. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE.
    On appeal from denial of motion to direct verdict for defendant at close of plaintiff's proofs on ground latter had not proved defendant guilty of negligence causing collision between motor vehicles, testimony must be viewed in a light most favorable to plaintiff.

2. AUTOMOBILES—NEGLIGENCE—JACK-KNIFING TRUCK-TRAILER.
    In passenger's action for injuries sustained when car in which he was riding met and collided with rear of trailer which had jack-knifed across pavement to left lane in which plaintiff was riding, as truck-trailer went backwards down icy slope, question of negligence of truck driver held, for jury (1 Comp. Laws 1929, § 4703).

Appeal from Kalamazoo; Weimer (George V.), J. Submitted April 8, 1936. (Docket No. 19, Calendar No. 38,798.) Decided June 16, 1936.

Case by Walter Bowman against Robert Struble, doing business as Struble Trucking Company, for personal injuries received in a collision between a car and a truck-trailer. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Alexis J. Rogoski* and *R. Glen Dunn,* for plaintiff.

*Clair S. Beebe,* for defendant.

Toy, J. Plaintiff brought this action to recover damages for injuries received when the automobile, in which he was riding as a passenger, collided with the truck-trailer unit of the defendant. At the close of plaintiff's proofs in the trial court, defendant moved for a directed verdict, which motion was denied. Defendant then offered testimony in defense, and the case was submitted to a jury who found for plaintiff in the amount of $1,700. Defendant made a motion for judgment *non obstante veredicto,* which was denied. Judgment was entered on the verdict; thereafter defendant moved for a new trial which also was denied. Whereupon appeal was taken to this court.

Only one question is submitted to us for determination, namely, whether the trial court was in error in denying defendant's motion for a directed verdict made at the close of plaintiff's proofs, on the ground "that plaintiff had not proved defendant to be guilty of negligence."

In deciding this point, the testimony must be viewed in a light most favorable to plaintiff.

The collision occurred at three o'clock in the morning of March 21, 1934, on the concrete State highway designated as US–131, between the village of Tustin and the city of Cadillac, and happened in this wise: defendant's truck-trailer while proceeding up a grade in a northerly direction on the highway, came to a portion of the pavement over which a thin filament of ice had formed. Because of the ice, the power wheels of the tractor were unable to gain traction and no forward progress could be made. At this time the truck-trailer unit was in its proper traffic lane on the easterly side of the highway. The automobile in which plaintiff was riding, being driven by the witness Broughton in a southerly direction on the highway, and in its proper traffic lane on the westerly side of the pavement, and with its headlights shining, approached the scene. As Broughton came abreast of the truck it moved backwards, jack-knifed across the highway into the path of the automobile, and almost instantly collided with Broughton's car. The witness Broughton was himself a truck driver of many years experience. He testified that he had driven trucks in all kinds of weather, both day and night and upon dry and slippery pavements. He testified:

"If a truck starts back and as long as the trailer is pulling on it and it is absolutely straight it will back straight. Just a fraction of the front wheel in any one way will throw the trailer sharp one way or the other. Whichever way you might turn the wheel, your trailer will go the other way, so that it buckles up. * * * It is possible to back in a given direction a semi-trailer. If you are going uphill on ice and your wheels spin and you see that you are going to go back, the first thing you would do is release everything, take the pressure from all the

wheels, cut your trailer off from the highway on your own side of the road. By cutting your tractor —the front wheels of your tractor—cutting them off will throw the rear wheels of your tractor toward the center of the pavement and get your trailer completely off from the road, and in a sandy spot or any soft spot will instantly stop your outfit on your own side of the road."

He further testified:

"When I got to a point within four or five feet of the front of the truck it was still on its own side of the highway. It was sliding then. The trailer slid over to the west of the center of the highway possibly four to six feet. It did not all slide over. * * * When it did start, it just jack-knifed all at once. The tail end of the trailer, the back end, got about four or six feet west of the center of the road. The left wheel of my car came in contact with the rear wheel of the trailer, the left rear wheel of the trailer. * * * It wasn't slippery (enough) for the trailer to slip around by itself."

Plaintiff's witness Madole, who was also a passenger in the Broughton automobile, and who was a truck driver of nine years' experience, testified:

"I am familiar with the operation of trailers and semi-trailers and tractors on concrete roads at nights when the pavement is a little slippery. And also when the pavement is upgrade. * * * When you are forced to stop a truck on the hillside you can control the semi-trailer so that it will not go over on the wrong side of the road by cutting it off along the shoulder instead of across the road. To cut it off on the shoulder you turn the wheels of the tractor so that it will jack-knife your semi to your right as you are going backwards. You can jack-knife the semi-trailer either to the right or to the left."

Appellant claims that this testimony on behalf of plaintiff showed the occurrence to be mere accident, and did not make a case of negligence against the defendant.

We are not in accord with this view. Two expert drivers of trucks were witnesses to the collision. They gave testimony to the effect that the driver of a truck-trailer unit, under conditions as there existed, could, by proper operation of the truck, have prevented a sideward movement of the truck and trailer. They testified that when a backward movement occurs it becomes a simple operation for an experienced driver to steer the unit by turning the steering wheel in the proper direction, so that the trailer may be caused to "jack-knife" in either direction as desired by the driver. From this testimony, the inference appears that the operator negligently turned the steering wheel in the wrong direction, and as a result the trailer jack-knifed across the highway onto the wrong side of the road and into the driveway of the automobile in which plaintiff was riding.

Had the truck been going forward and a turn of the steering wheel in the wrong direction had caused the truck to enter the wrong side of the highway, there to collide with an oncoming car, we think that no one would seriously contend but that proof of such occurrence would make a *prima facie* case of negligence. 1 Comp. Laws 1929, § 4703.

We see no logical reason for any different reasoning because the truck was going backward.

It was said by Mr. Chief Justice Potter in *Hale* v. *Cooper,* 271 Mich. 348, 356:

"When he saw, or ought to have seen, the lights of the oncoming automobile of defendants on its own proper side of the highway and in its usual and

ordinary lane of travel, he should have remained stopped; at least, he should have refrained from turning his automobile across the lane of traffic of defendants' automobile and immediately in front of it, thus making the collision inevitable.''

The trial court was not in error in denying defendant's motion for a directed verdict. The judgment is affirmed, with costs to the plaintiff.

NORTH, C. J., and FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred. POTTER, J., took no part in this decision.